A09A0360. BURROWES v. THE STATE.
(675 SE2d 518)

MIKELL, Judge.

Guillermo Burrowes was convicted of simple battery in connection with an incident involving his former girlfriend of two and a half

---

[8] Compare, e.g., id. at 261.

[9] *In the Interest of C. B.*, supra at 148.

YALE LAW LIBRARY

years. The trial court sentenced him to 12 months, to serve 20 days in confinement and the remainder on probation. Burrowes appeals the denial of his amended motion for new trial, arguing that the trial court erred by: (1) denying his request for a continuance; (2) refusing to give his requested charge on justification; (3) granting the state's motion in limine to exclude evidence of the victim's infidelity; (4) refusing to allow the victim's written statements to go out with the jury during their deliberations; and (5) denying his motion for a directed verdict because the accusation did not allege the specific act constituting simple battery. We affirm.

Viewed in support of the verdict, the evidence shows that on February 21, 2006, Burrowes went to the home of Tamela Hysten, his former girlfriend, to look for some tax forms. When Burrowes arrived, Hysten was taking a bath in the master bathroom and talking to a male caller on the phone. According to Hysten, after she hung up the phone and got out of the tub, Burrowes followed her into the master bedroom and proceeded to hit her in the head, knocking her to the ground. Burrowes then jumped on Hysten and started choking her. Hysten called for her children, then 11 and 16, and they came into the bedroom and pulled Burrowes off of her. Burrowes then locked the children out of the room and again hit Hysten in the head, knocking her down. The children kicked the bedroom door down and subdued Burrowes while Hysten grabbed a machete she kept in the bedroom. After Burrowes snatched the machete from her hands, Hysten fled naked down the stairs, grabbed a towel from the laundry room, and ran outside, wrapped only in the towel. Burrowes chased Hysten back into the house and spit on her several times. At some point, Hysten was able to grab her car keys and run back outside, where she locked herself in her car and called 911.

Hysten's children testified that they did not see Burrowes hit their mother, but that they observed him pinning her to the floor. They explained that they pulled Burrowes off of Hysten twice and that the eldest child broke down the bedroom door in order to help Hysten. Both children testified that Burrowes cut his hand on the machete when he tried to take it out of Hysten's hand, and the 11-year-old son testified that he saw Burrowes spit in his mother's face.

At trial, Burrowes acknowledged that he had a heated exchange with Hysten, but denied hitting her, spitting on her, or pinning her to the bedroom floor. He claimed that Hysten swung the machete at him and that when he tried to protect himself, the machete cut through a gold ring on his finger, injuring his hand.

1. At the outset, we note that Burrowes has failed to comply with the rules of this Court. Burrowes fails to indicate the method by which *each* alleged error was preserved for consideration as required

by Court of Appeals Rule 25 (a) (1). Burrowes indicates the method by which his first enumeration of error was preserved for consideration, and cites amply to the record in this regard, but does nothing to address how his four remaining enumerations were preserved for consideration. Although, we have reviewed each of the delineated enumerations, this Court will not cull the record in search of error on behalf of a party. Accordingly, if we have missed something in the record or misconstrued an argument, the responsibility rests with counsel.

2. Burrowes contends that the trial court erred in denying his request for a continuance because (a) counsel was retained only one day before jury selection and (b) Hysten's statements to police were not disclosed to the defense until after jury selection. The grant or denial of a continuance is within the sound discretion of the trial court and will not be disturbed unless it clearly appears the trial court abused that discretion.[1] We find no such abuse.

(a) The record reflects that Burrowes entered a plea of not guilty on May 23, 2006. On June 14, 2006, attorney Kenneth Turner filed an entry of appearance on behalf of Burrowes and a demand for a jury trial. The case was called for trial on September 13, 2006, at which point co-counsel Lynn Whatley filed an entry of appearance and asked for a continuance to allow him to become familiar with the case and explore the "newly discovered" evidence. The trial court denied the motion for continuance, indicating that Burrowes had ample opportunity to hire co-counsel and that the court would not delay the trial to allow counsel time to get up to speed. We find no abuse of the trial court's discretion in denying the motion made minutes before jury selection, particularly given that attorney Whatley was assisted at trial by attorney Turner who had been involved in the case for several months.

(b) After the jury was selected, defense counsel advised the court that the state had not produced copies of Burrowes' or Hysten's written statements to police, which had been discovered by defense counsel shortly before voir dire. The state explained that it did not have the statements in its own file and therefore could not produce them to Burrowes. The trial court agreed to help counsel obtain the statements from the police, but denied the motion for continuance on this ground, noting that counsel may not wait until the last minute to look for evidence, particularly the victim's statement, which counsel should know is routinely taken by police. The court recessed the trial until the following morning, at which time defense counsel renewed his motion for a continuance. Counsel explained that he needed a continuance (1) to delve further into the identity of

---

[1] OCGA § 17-8-22. See *Bunge v. State*, 149 Ga. App. 712, 713 (1) (A) (256 SE2d 23) (1979).

YALE LAW LIBRARY

Hysten's male caller, "Mark," and their relationship, and (2) to further examine the inconsistencies in Hysten's various statements. The trial court denied Burrowes' renewed motion for a continuance, noting (1) that counsel could delve further into Hysten's inconsistent statements during cross-examination and (2) that counsel knew of Mark's existence and identity before discovering Hysten's statement to police.

The trial court did not abuse its discretion in refusing to grant a continuance since it is clear from the record that the state did not withhold the evidence and Burrowes has not shown how he was prejudiced. Burrowes contends that he may have proceeded differently with voir dire if he had been given the statements and that his trial strategy would have been different; however, Burrowes does not explain how his strategy would have been different or what he would have done differently during voir dire. Moreover, defense counsel thoroughly cross-examined Hysten about alleged inconsistencies in her various statements, and also examined the responding officer about Hysten's statements to police and the parties' conflicting statements. "[Burrowes] has not shown what he would have accomplished if he was provided more time."[2]

3. Burrowes contends that the trial court erred by refusing to give his requested charge on justification. He argues that the charge was proper because he acted in self-defense. While defense counsel requested a charge on the defense of justification, he subsequently withdrew that request.[3] Thus, Burrowes has waived the issue on appeal.[4] Even if counsel had not withdrawn his request, the evidence did not support a justification charge.

> An affirmative defense is one in which the defendant admits the act but seeks to justify, excuse, or mitigate it. The defendant must admit the crime before he can raise the defense. In addition, even if justification is a defendant's sole defense, it is not error to refuse the charge if there is no evidence to support it.[5]

Here, although Burrowes admitted struggling with Hysten over the telephone, he denied grabbing or striking her on the head or body, as alleged in the accusation. Thus, a justification charge was not warranted.

---

[2] *Peeples v. State*, 234 Ga. App. 454, 456 (2) (507 SE2d 197) (1998).

[3] At the close of the evidence, defense counsel indicated that he wanted to renew his request for a charge on justification; however, after a brief discussion with the court, wherein counsel admitted his confusion, counsel seemed to indicate that he was satisfied the charge did not apply to this case.

[4] *Muller v. State*, 284 Ga. 70, 71 (2) (663 SE2d 206) (2008).

[5] (Footnotes omitted.) *Code v. State*, 255 Ga. App. 432, 434 (4) (565 SE2d 477) (2002).

4. Burrowes contends that the trial court erred in granting the state's motion in limine to exclude evidence that Hysten allegedly cheated on Burrowes during their relationship. "The admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court[,] whose decision will not be disturbed on appeal absent a clear abuse of discretion."[6]

The record reflects that the state moved to exclude as irrelevant allegations that Hysten and Burrowes cheated on each other. The trial court's ruling on the motion was limited in scope, allowing evidence as to the nature of the discussion precipitating the battery, i.e., alleged infidelity, but prohibiting both sides from exploring the details of any alleged affairs and/or delving into the truthfulness of the allegations. Burrowes claims that this ruling "placed a chilling effect upon [his] ability to expose the untruthfulness of Ms. Hysten[, and] limited [his] ability to cross examine the children in this regard." He does not explain what he would have exposed or how it would have been relevant to the issues in this case. We are not persuaded that delving into the details of an alleged affair and/or questioning Hysten's truthfulness on the issue was relevant to whether Burrowes committed a battery on her. During cross-examination, defense counsel questioned Hysten about her male callers on the evening in question and asked her if she became irate because Burrowes had just "found out about her behavior with other men." Any further exploration into Hysten's alleged infidelity had no bearing on her veracity, was intended only to impugn her character, and had no relevance to any disputed issues in the case. Accordingly, the trial court did not abuse its discretion in limiting the evidence.

5. Burrowes further contends that the trial court erred in refusing to allow Hysten's written statements to go out with the jury during their deliberations. The following discussion occurred immediately following the trial court's charge to the jury:

The Court: Anything we need to take up? If you all will come up here and inspect the exhibits. We need to agree what doesn't go out under the continuing witness rule. . . .

[The State]: Well, I would [contend] that none of the statements on the board go out.

[Defense Counsel]: Right.

[The State]: The [911] tape doesn't go back with them either. If they want to listen to it, they can.

---

[6] (Citation and punctuation omitted.) *Grimes v. State*, 280 Ga. 363, 366 (6) (628 SE2d 580) (2006).

The Court: Well, the tape can go back there and sit on the table, but if they —
[The State]: Yeah.
The Court: — take it back so that they know it is available.
[The State]: All right.
[Defense Counsel]: What again — what did you say, Judge, on these?
The Court: They're all going to stay out here with us.
[Defense Counsel]: Right.
The Court: Continuing witness rule.
[Defense Counsel]: Okay. Right. That's right.

While the jury was deliberating, defense counsel advised the trial court as follows: "I'm kind of feeling that there's a basis for the . . . statements going in. But I'd rather give you law on it and I'll do it very shortly, you know. I know I need to do it now." The court responded, "Yeah, you need to make a timely objection. . . . I don't know if it would be time right now." And counsel replied, "I understand." Shortly after this discussion, the jury returned with its verdict. Counsel did not raise the issue again.

As Burrowes failed to object to the trial court's refusal to allow the statements to go out with the jury, he waived any error. "An objection not raised at trial cannot be asserted for the first time on appeal because it is deemed waived."[7]

6. Burrowes contends that the trial court erred in denying his motion for a directed verdict because the accusation did not allege the specific act constituting simple battery. In this regard, Burrowes argues that the trial court acknowledged during the trial that there was no battery. Burrowes' claim is misleading and meritless.

After defense counsel indicated that he might renew his request for a justification charge, the following discussion ensued:

The Court: What's [Burrowes] admitting to?
[Defense Counsel]: Sir, what now?
The Court: What is he admitting to?
[Defense Counsel]: He's — the issue would be that any physical altercation that he admitted to, which there was admitted — he admitted to a struggle. There was some struggle.
The Court: But that wouldn't be a simple battery.

Contrary to Burrowes' contention, the trial court stated only that

---

[7] (Citation omitted.) *Griffin v. State*, 243 Ga. App. 282, 286 (6) (531 SE2d 175) (2000).

Burrowes' version of the incident did not show a battery; the trial court never insinuated that no battery occurred. The testimony in this case, that Burrowes hit Hysten and pinned her to the floor of her bedroom, was sufficient for the jury to find Burrowes guilty of simple battery beyond a reasonable doubt.[8] Thus, the trial court did not err in denying Burrowes' motion for a directed verdict.

Burrowes does not offer any argument to support his claim that the accusation did not allege the specific act constituting simple battery and we will not attempt to guess what that argument might be.

*Judgment affirmed. Johnson, P. J., and Ellington, J., concur.*

DECIDED MARCH 13, 2009.

*Lynn H. Whatley*, for appellant.
*Charles A. Spahos, Solicitor-General, Tasha M. Mosley, Assistant Solicitor-General*, for appellee.

