**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**October 16, 2013**

# In the Court of Appeals of Georgia

A13A1625. CLOWERS v. THE STATE.                    DO-061

DOYLE, Presiding Judge.

Following a jury trial, Jabari Clowers was convicted of selling marijuana,[1] possessing marijuana with the intent to distribute,[2] and obstructing law enforcement officers.[3] Clowers appeals the denial of his subsequent motion for new trial, arguing that (1) the evidence was insufficient to support his convictions; (2) the trial court erred by denying his motion for a directed verdict; (3) the trial court erred by excluding certain evidence; (4) trial counsel was ineffective; and (5) the trial court

---

[1] OCGA § 16-13-30 (j) (1).

[2] Id.

[3] OCGA § 16-10-24 (a).

erred by answering questions propounded by the jury. We affirm, for the reasons that follow.

When reviewing the sufficiency of the evidence on appeal,

the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.[4]

So viewed, the record shows that on July 19, 2010, an undercover officer with the Fayette County Tactical Narcotics Team arrived at a gas station in Fayette County to conduct an undercover buy of marijuana from Darius McDaniels. At approximately 3:00 p.m., a white SUV arrived at the gas station, and the driver, Clowers, backed the vehicle into the parking space beside the officer's vehicle. McDaniels, the passenger, "wrestle[d] around with some stuff that was in his lap," and then exited the SUV.

---

[4] (Citations omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (8) (99 SCt 2781, 61 LE2d 560) (1979).

McDaniels gave the undercover officer a plastic, gallon-sized bag containing marijuana in exchange for $1,200 in cash.

After the officer gave a verbal signal, narcotics tactical team members emerged from a nearby black SUV with dark, tinted windows. The officers wore masks over their faces to protect their identities. One team extracted McDaniels, and the other officers surrounded Clowers's SUV. The first officer to approach the SUV was wearing a black ballistic vest with the word "SHERIFF" emblazoned on the front and back and a sheriff's badge on the front. One of the officers told Clowers to: "Get out of the f–king car. Get out of the car. Get on the ground." As the officers approached, Clowers exited the SUV and ran. One officer loudly instructed Clowers to stop and advised him, "Sheriff's office, sheriff's office, stop running." Clowers continued to run across a busy intersection and behind another gas station, where he was eventually apprehended.

Police searched the SUV that Clowers was driving and found a Wendy's bag containing 52 grams of marijuana in the center console. The marijuana that McDaniels sold to Martinez weighed 339.5 grams. Officers also found marijuana in McDaniels's possession at the time of his arrest. While interviewing Clowers, one of the officers noted the smell of burnt marijuana about Clowers's person.

3

Clowers was arrested and charged with selling marijuana, possessing marijuana with the intent to distribute, and obstruction. He was found guilty on all counts, and he appeals the denial of his subsequent motion for new trial.

1. As an initial matter, we note that Clowers's arguments in his appellate brief do not track his enumerations of error, in violation of Court of Appeals Rule 25 (c) (1). Furthermore, Clowers has grouped together multiple enumerations into a single argument section.

> As we have previously held, Rule 25 (c) (1) is more than a mere formality. It is a requirement which this Court imposes to ensure that all enumerations of error are addressed and to facilitate review of each enumeration. By failing to comply with the rule, [Clowers] has hindered the Court's review of his assertions and has risked the possibility that certain enumerations will not be addressed.[5]

Nonetheless, we will endeavor to consider his arguments as made in the brief.

2. Clowers contends that the evidence was insufficient to support his convictions. We disagree.

---

[5] (Punctuation omitted.) *Davis v. Foreman*, 311 Ga. App. 775, 777 (1) (717 SE2d 295) (2011).

(a) *Sale of marijuana and possession of marijuana with the intent to distribute.* Clowers contends that the evidence was insufficient to support his conviction for the sale and possession of marijuana with the intent to distribute because the State failed to prove that he had possession of the marijuana with the intent to distribute, that he was a party to the crime of the sale of marijuana, or that he had the intent to commit the crimes. These arguments are without merit.

"While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred."[6]

> The intention with which an act is done is peculiarly for the jury. It is often difficult to prove with direct evidence an individual's intent as it existed at the time of the act for which they are being prosecuted. Therefore, it is often necessary to prove such intent through the use of circumstantial evidence. Intent, which is a mental attitude, is commonly detectible only inferentially, and the law accommodates this. A jury may infer that a person acted with criminal intent after considering the "words, conduct, demeanor, motive, and all other circumstances

---

[6] (Punctuation omitted.) *Michael v. State,* 281 Ga. App. 289, 290-292 (1) (635 SE2d 790) (2006).

connected with the act for which the accused is prosecuted."[7] In order to support a conviction, such circumstantial evidence does not have to exclude *every* possible hypothesis other than the defendant's guilt, but only *reasonable* hypotheses. Whether a hypothesis is reasonable is a question for the jury, and such finding will not be disturbed on appeal unless the guilty verdict is insupportable as a matter of law.[8]

Here, the evidence showed that Clowers drove the vehicle to the controlled buy, backed in to the parking spot next to the undercover officer, waited while McDaniels retrieved the 339.5-gram parcel of marijuana, exited the vehicle, and sold it to the undercover officer in an adjacent car, and then fled when officers approached his car and demanded that he exit. Clowers smelled of marijuana when he was arrested, and the officers recovered a bag containing 52 grams of marijuana from the center console of Clowers's vehicle after his arrest. Construing this evidence in the light most favorable to the verdict, "we conclude that there was sufficient evidence from which the jury could find that [Clowers] had the requisite knowledge and intent to assist with or participate in the crime and that he was, therefore, guilty beyond a

---

[7] OCGA § 16-2-6.

[8] (Punctuation omitted; emphasis in original.) *Able v. State*, 312 Ga. App. 252, 254 (1) (718 SE2d 96) (2011).

6

reasonable doubt of possession of marijuana with intent to distribute [and the sale of marijuana]."[9]

(b) *Obstruction.* "A person commits the offense of obstruction of an officer when he knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties. Flight after a lawful command to halt constitutes obstruction of an officer."[10]

Here, the evidence showed that after McDaniels sold the marijuana to the undercover officer, multiple officers surrounded Clowers's vehicle. At least one of the officers was wearing a black ballistic vest with the word "SHERIFF" emblazoned on the front and back and a sheriff's badge on the front. After an officer instructed him to exit the vehicle and get on the ground, Clowers got out of his SUV and ran. He continued to run as one officer advised him, "Sheriff's office, sheriff's office, stop running," until he was eventually apprehended behind a nearby gas station. "A

---

[9] Id. at 255 (1). See also *Maddox v. State*, ___ Ga. App. ___, ___ (1) (746 SE2d 280) (2013).

[10] (Footnote omitted.) *Cofield v. State*, 304 Ga. App. 165, 168 (3) (695 SE2d 696) (2010) (citing OCGA § 16-10-24 (a)).

7

rational trier of fact could have found from the evidence that [Clowers] committed the crime of obstruction of an officer."[11]

3. Clowers contends that we should reverse the trial court's denial of his motion for a directed verdict because the trial judge erroneously injected his personal observations and opinion and relied thereon in considering the motion. This enumeration presents no basis for reversal.

At the close of the State's case, defense counsel made a motion for a directed verdict. After hearing argument, the trial court denied the motion outside the presence of the jury, explaining its ruling as follows:

> I find that [Clowers's] suspicious backing in, coupled with his running, coupled with his passenger jumping out, and execution of a drug transaction, coupled with dope left in the car, coupled with something that has not really been mentioned, and that is the odor of this marijuana. This marijuana – of course, there was a small nick in one of the bags yesterday, but even after sealing – and personally, I have helped reseal one of the bags of marijuana – but the odor was still so strong coming through sealed, vacuum[-]sealed bags, one can only imagine what the odor was of the marijuana in a car in July. So I think there is evidence to where a jury could conclude that he certainly was well aware of the great quantities of marijuana, and the fact that his passenger was

---

[11] Id. See also *Johnson v. State*, 264 Ga. App. 889, 891-892 (2) (592 SE2d 507) (2003).

8

participating in a drug deal[,] and he was helping therein. I think there's sufficient evidence to go to the jury on all issues.[12]

Clowers argues in his brief that the trial court's comments violate OCGA § 17-8-57, which prohibits a judge from "express[ing] or intimat[ing] his opinion as to what has or has not been proved or as to the guilt of the accused." Here, because "the purpose of OCGA § 17-8-57 is to prevent the jury from being influenced[,] and the jury was not present at the time of these remarks, the statute was not violated."[13]

Further,

[a]fter the jury has returned a verdict of guilty, and the defendant seeks a reversal of his conviction on appeal by arguing either that the trial court erred in failing to direct a verdict of acquittal or denying a motion for new trial on the general grounds, the only question presenting itself to the appellate court is whether there is any evidence to support the verdict. It is the function of the jury, not the appellate court, to determine the credibility of witnesses and weigh any conflicts in the evidence.[14]

---

[12] (Punctuation omitted.)

[13] (Punctuation omitted.) *Lockaby v. State*, 265 Ga. App. 527, 528 (1) (594 SE2d 729) (2004). See also *Jones v. State*, 250 Ga. 498, 499-500 (4) (299 SE2d 549) (1983).

[14] (Citation and punctuation omitted.) *Gregory v. State*, 148 Ga. App. 176, 177 (251 SE2d 130) (1978).

As we concluded in Division 2, the evidence was sufficient to support the jury's verdict in this case. Thus, the trial court did not err by denying Clowers's motion for a directed verdict.

4. Clowers contends that the trial court erred by excluding certain evidence. We disagree.

(a) *Clowers's statement*. Clowers argues that the trial court erred by failing to admit his statement to police that he was not acting in concert with McDaniels and that he had no knowledge of McDaniels's criminal activity, which was Clowers's sole defense.

During cross-examination of one of the officers, defense counsel elicited testimony that Clowers made a statement to the officer. When defense counsel asked the officer about the substance of the statement, the State objected, and a bench conference ensued. The bench conference was not recorded by the court reporter, nor was the trial court's ruling thereon. Thus, Clowers has failed to show any clear ruling by the trial court. "As the appellant, [Clowers] had the burden to affirmatively show error [in] the record. [He has] failed to do so."[15]

---

[15] (Citation and footnote omitted.) *McClellan v. Evans*, 294 Ga. App. 595, 599 (3) (669 SE2d 554) (2008).

Pretermitting Clowers's failure to demonstrate that the trial court even made such a ruling, we note that

> [s]elf-serving declarations, such as [Clowers's purported] statement, are inadmissible hearsay unless the declarant testifies and is subject to cross-examination. The defendant is allowed to declare his innocence in court; he is not allowed to avoid this opportunity by pre-trial declarations of innocence. . . . That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination.[16]

(b) *Testimony from officer.* Clowers also argues that the trial court erred by sustaining the State's objection to defense counsel's inquiry of one of the officers regarding whether the officer had ever backed into a parking space. Clowers, however, failed to provide a citation to the record for such a ruling. Thus, this enumeration presents no basis for reversal.[17] Nonetheless, we note that "[t]he admission or exclusion of evidence which is objected to on the ground of relevancy lies within the sound discretion of the trial court, whose decision will not be disturbed

---

[16] (Citations and punctuation omitted.) *Parker v. State*, 276 Ga. 598 (2) (581 SE2d 7) (2003).

[17] See *Dix v. State*, 246 Ga. App. 338, 340 (3) (540 SE2d 294) (2000).

11

on appeal absent a clear abuse of discretion."[18] We find no abuse of discretion in excluding the officer's testimony regarding his own parking habits as irrelevant.[19]

5. Clowers further argues that the trial court erred by denying his motion for new trial on the basis that trial counsel was ineffective. We disagree.

In considering Clowers's argument,

we apply the two-prong test for determining the validity of a claim of ineffectiveness of counsel established in *Strickland v. Washington*,[20] which asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency. If the defendant cannot satisfy either of the two prongs of the *Strickland* test, his ineffective assistance claim fails. On appeal of a claim of ineffective assistance, we accept the trial court's factual findings and credibility determinations unless they are clearly erroneous, while we independently apply the legal principles to the facts.[21]

---

[18] (Punctuation omitted.) *Burrowes v. State*, 296 Ga. App. 629, 633 (4) (675 SE2d 518) (2009).

[19] See id.

[20] 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

[21] (Citation and punctuation omitted.) *Williams v. State*, 319 Ga. App. 888, 889 (739 SE2d 4) (2013).

12

(a) *Pretrial investigation/failure to secure evidence and testimony.*

(i) Clowers argues that trial counsel was ineffective for failing to secure the trial testimony of his best friend and roommate, Christopher Smith, to support Clowers's assertion that he had not seen McDaniels in "quite some time" and merely gave him a ride to the gas station. At the motion for new trial hearing, Smith testified that on the day of Clowers's arrest, Smith and Clowers spoke on the phone about meeting at the mall later in the day and that Smith was unfamiliar with McDaniels. Trial counsel, however, testified that Clowers did not provide Smith's name to him before trial. Therefore, counsel's failure to secure Smith's testimony was not deficient.[22] Further, given the evidentiary proffer, we agree with the trial court that Clowers has failed to demonstrate a reasonable probability that trial counsel's failure to secure Smith's testimony affected the verdict.[23]

(ii) Clowers also alleges that trial counsel was ineffective by failing to secure video or to subpoena other friends or family members who could corroborate his assertion that he did not know McDaniels well and merely gave him a ride to the gas station on the day of his arrest. None of these witnesses testified at the motion for

---

[22] See *Green v. State*, 291 Ga. 287, 297 (9) (d) (728 SE2d 668) (2012).

[23] Cf. *Strickland v. State*, ___ Ga. App. ___, ___ (2) (b) (746 SE2d 204) (2013).

new trial hearing, nor did Clowers make a proffer as to what the video – assuming it existed – would have shown. His failure to do so is fatal to this claim. Thus, "[Clowers] offered no more than speculation regarding the content of such alleged potential favorable evidence, which is insufficient to sustain a claim of ineffective assistance of counsel."[24]

(b) *Failure to object to the chain of custody*. Clowers argues that the State failed to prove the chain of custody of the marijuana tested by the State, and his trial counsel was ineffective in failing to object or argue on this ground.

> To show a chain of custody adequate to preserve the identity of fungible evidence, the State must prove with reasonable certainty that the evidence is the same as that seized and that there has been no tampering or substitution. The State is not required to foreclose every possibility of tampering; it need only show reasonable assurance of the identity of the evidence. We review the trial court's decision on the adequacy of the chain-of-custody evidence under an abuse-of-discretion standard. . . . [W]here the testimony shows that the police placed the substance in a tamper-proof identifiable container and that the crime lab or other technician who tests the substance received it in the same

---

[24] (Punctuation omitted.) *Pringle v. State*, 281 Ga. App. 230, 234 (2) (b) (635 SE2d 843) (2006). See also *Herrington v. State*, 285 Ga. App. 4, 5-6 (b) (645 SE2d 29) (2007) ("The failure of trial counsel to employ evidence cannot be deemed to be prejudicial in the absence of a showing that such evidence would have been relevant and favorable to the defendant.") (punctuation omitted).

container with no proof of tampering or substitution, the State has met its burden of showing with reasonable certainty that the substance tested was the same as that seized.[25]

"[A] chain of custody argument goes to the weight and credit a factfinder assigns to the evidence, rather than to its admissibility."[26]

Here, the State presented testimony that the marijuana was bagged at the scene and placed in an evidence locker, from which it was later removed and tested. According to the witnesses who tested the two batches, they did not appear to be tampered with. Given this evidence, "[c]ounsel was not ineffective . . . in failing to make an objection lacking in merit."[27] Further, trial counsel testified at the motion for new trial hearing that he did not assert an objection to chain of custody because his defense was not that the substance was not in fact marijuana, but instead that it belonged to McDaniels and that Clowers had no knowledge of its existence or the sale. "[C]ounsel's decisions on which motions and objections to make are matters of

---

[25] (Punctuation and footnote omitted.) *Franklin v. State*, 281 Ga. App. 409, 411-412 (2) (636 SE2d 114) (2006).

[26] (Punctuation omitted.) *Ross v. State*, 313 Ga. App. 695, 698 (1) (c) (722 SE2d 411) (2012).

[27] *Franklin*, 281 Ga. App. at 412 (2).

15

trial strategy and tactics that are within the lawyer's exclusive province and do not amount to ineffective assistance of counsel."[28]

(c) *Other*.

Although [Clowers] raises in general terms three more instances of alleged ineffectiveness,[29] he does not enunciate how any of them satisfy either the deficiency or prejudice prongs of *Strickland v. Washington*, supra, and we do not see how any of them demonstrate ineffectiveness of trial counsel. That being so, we cannot say he has borne his burden of showing he was denied effective assistance of counsel.[30]

6. Finally, Clowers argues that the trial court erred by engaging in a colloquy with the jury because so doing invaded the province of the jury and improperly influenced the verdict. This enumeration is without merit.

During deliberations, after a question from the jury, the trial court recharged the jury on party to a crime, and then engaged in a brief colloquy with the foreperson

---

[28] (Punctuation omitted.) *Neal v. State*, 308 Ga. App. 551, 555 (4) (d) (707 SE2d 503) (2011).

[29] Clowers contends in the argument portion of his brief that trial counsel was ineffective by failing to reserve or preserve objections during jury selection; failing to request that closing arguments be taken down by the court reporter; and failing to object or reserve objections to the jury charges. We note that Clowers failed to raise these instances in his enumeration of error.

[30] *Williams v. State*, 277 Ga. 853, 858 (6) (f) (596 SE2d 597) (2004).

regarding possession with intent to sell. After the jury returned to deliberations, the trial court asked the parties if they had any objections, and trial counsel responded:

> I'm sure there has to be something. I mean, I believe you addressed my concern with the first part. . . . I'm just, you know, at a loss as to what is going on with the second part here. I had hoped that the closing arguments from both attorneys would have been sufficient to flush [sic] this out.

On appeal, Clowers generally "asserts that the discussion between the jury foreman and the trial court was confusing and left the jury with an incomplete understanding of the necessary elements of the crime." Clowers fails, however, to specifically point out any incorrect portion of the charge or to clarify how the charge was incomplete, and our review reveals no such errors or omissions. Thus, Clowers has failed to show harm or error in the recharge and colloquy, and this enumeration presents no basis for reversal.[31]

*Judgment affirmed. McFadden and Boggs, JJ., concur.*

---

[31] See generally *Preston v. State*, 183 Ga. App. 20, 23 (4) (357 SE2d 825) (1987).